IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ALVIN JOHNS,

            Plaintiff,

    v.

CITY OF EUGENE, OFFICER
YOLANDA CONNER, OFFICER KYLE
EVANS, OFFICER BRYAN INMAN,
OFFICER ROBERT ROSALES, and
BETSY JEAN CASTLETON,

            Defendants.

Case No. 6:16-cv-00907-AA
OPINION AND ORDER

AIKEN, Judge:

In this action, plaintiff asserts various claims under 42 U.S.C. § 1983, including for deprivations of his Fourth and Fourteenth Amendment rights, as well as state law negligence and intentional infliction of emotion distress claims. Government defendants ("defendants") move to dismiss all claims against them.[1] For the reasons set out below, the Court denies defendants' motion (doc. 15).

---

[1] In this opinion, "defendants" refers to the City of Eugene and Officers Yolanda Conner, Kyle Evans, Bryan Inman, and Robert Rosales, but excludes defendant Betsy Jean Castleton, who she did not join in the motion to dismiss.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

Because on 12(b)(6) motions courts must accept complaints' allegations as true and make reasonable inferences in plaintiff's favor, the Court accepts plaintiff's version of events for the purpose of the present motion only. The Court merely tests the sufficiency of plaintiff's complaint to state a claim that he is plausibly entitled to relief. Fed. R. Civ. P. 8(a)(1).

On the evening of August 3, 2014,[1] defendant Betsy Jean Castleton appeared at plaintiff Alvin Johns' home with a strong odor of alcohol on her breath and insisted on seeing Mr. Johns' son, Alvin Johns II. First Am. Compl. ¶¶ 6 & 13 (doc. 4). Given the time of night, plaintiff refused to allow Ms. Castleton inside his home. *Id.* ¶ 13. Despite plaintiff's repeated requests for Ms. Castleton to leave, Ms. Castleton remained. *Id.* As plaintiff grew increasingly frustrated with Ms. Castleton's "loud and obnoxious" behavior, he verbally threatened Ms. Castleton and then showed her a baseball bat. *Id.* ¶ 9 & 13. He then phoned defendant City of Eugene's Police Department for assistance. *Id.*

When defendant Officers Yolanda Conner, Kyle Evans, Brian Inman, and Robert Rosales arrived on the scene, Ms. Castleon falsely accused plaintiff of hitting her in the throat with the baseball bat and destroying her cell phone. *Id.* ¶ 1, 6 & 9. Plaintiff states that he merely pointed to his baseball bat and that Ms. Castleton broke her own phone when she drunkenly fell backwards. *Id.* ¶ 13. He further asserts Ms. Castleton showed showing no signs of bruising. *Id.* ¶ 14.

---

[1] Plaintiff's First Amended Complaint does not specify the date of this encounter. Defendants asked the Court to take judicial notice of information filed in *State of Oregon v. Alvin Blake Johns*, Lane County Circuit Court Case No. 211415761, the criminal case against plaintiff related to plaintiff's various civil rights and state law claims. The Court grants defendants' unopposed motion because it is appropriate to take judicial notice of undisputed facts in the public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001); Fed. R. Evid. 201. The judicially noticed documents contain the date of the incident.

The officers believed Ms. Castleton, a white woman, rather than plaintiff, a black man, and arrested plaintiff. *Id.* ¶¶ 13, 26. Plaintiff remained in custody for three days and because his release agreement forbade him from being within a mile of Ms. Castleton, the City of Eugene forced plaintiff out of his home. *Id.* ¶ 15. In order to comply with the terms of his release, plaintiff rented a room in a hotel for 23 days at a cost of approximately $1,350. *Id.* The terms of the release agreement also prevented plaintiff from visiting a doctor in San Francisco and taking a long-planned trip to see a football game in Seattle. *Id.* Subsequently, the grand jury declined to indict plaintiff. *Id.* ¶ 17.

## STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a complaint is construed in favor of the plaintiff, and its factual allegations are taken as true. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" a plaintiff must show more than the "sheer possibility that a defendant has acted unlawfully" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

I.   *Fourth Amendment*

Defendants move to dismiss plaintiff's claim that his arrest violates the Fourth Amendment for two reasons. First, defendants argue they did not violate the Fourth Amendment because they had probable cause to arrest plaintiff. Second, defendants argue that because a prosecutor submitted the City of Eugene's criminal case against plaintiff to a grand jury, they are protected by the presumption that the prosecutor used his independent judgment to determine that probable cause existed to support plaintiff's arrest. Defendants argue that because plaintiff fails to allege any facts that would rebut the presumption that the prosecutor acted properly, plaintiff fails to state a plausible claim for relief. Plaintiff responds no reasonable officer could support plaintiff's arrest with probable cause. In particular, plaintiff alleges the evidence at the scene led to only one reasonable conclusion: that he did not assault Ms. Castleton or destroy her cell phone, but that Ms. Castleton made false allegations and broke her own phone by drunkenly falling on it.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "[A]n arrest is lawful. . . only if it is accompanied by probable cause to believe that the arrestee has committed, or is committing, an offense." *Conner v. Heiman*, 672 F.3d 1126, 1132 (9th Cir. 2012) (citation and quotation marks omitted).

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "Whether probable cause exists depends 'on the totality of facts[.]'" *Sialoi v. City of San*

PAGE 4 – OPINION AND ORDER

*Diego*, 823 F.3d 1223, 1232 (9th Cir. 2016) (quoting *Lopez*, 482 F.3d at 1073).  While probable

cause does not require law enforcement officers to support their seizure with "certainty or even a

preponderance of the evidence," officers must be able to conclude that there is a "fair probability"

that defendant committed crime, *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006), and

"may not disregard facts tending to dissipate probable cause," *Sialoi*, 823 F.3d at 1232.  Finally,

while law enforcement officers do not need "conclusive evidence of guilt" to support seizures with

probable cause, "mere suspicion, common rumor, or even strong reason to suspect" a plaintiff

engaged in criminal conduct is not enough to establish probable cause.  *Ramirez v. City of Buena*

*Park*, 560 F.3d 1012, 1023 (9th Cir. 2009) (citation and quotation marks omitted); *Harper v. City*

*of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008) (citation and quotation marks omitted).

Defendants first dispute plaintiff's factual assertions and suggest probable cause supported

plaintiff's arrest.  In particular, defendants ask the court to entertain alternative characterizations of

plaintiff's conduct and assert that evidence not addressed in the complaint corroborated Ms.

Castleton's story.[1]  However, on a motion to dismiss, merely contesting plaintiff's factual allegations

is insufficient because the Court must accept plaintiff's allegations as true.  *Daniels-Hall*, 629 F.3d

at 998.

Taking plaintiff's allegations as true and making all reasonable inferences in his favor,

plaintiff plausibly pleads a Fourth Amendment violation.  Plaintiff not only alleges that he is

innocent but also suggests that the officers neglected evidence that would tend to negate probable

---

[1] Relatedly, defendants argue even if there was no probable cause to support plaintiff's arrest for
assault and criminal mischief, there was no Fourth Amendment violation because they could
have arrested plaintiff for menacing under Or. Rev. Stat. § 163.190(1).  This argument rests on
disputed facts.  Moreover, the grand jury declined to indict plaintiff on a charge of menacing.
First Am. Compl. ¶ 17.

cause. Specifically, plaintiff alleges that law enforcement officers ignored the strong odor of alcohol of Ms. Castleton's breath as well as the absence of bruising or redness that would indicate that plaintiff hit her in the throat with a baseball bat. First Am. Compl. ¶ 6. If those allegations are proven, law enforcement officers may have arrested plaintiff on "mere suspicion" in violation of the Fourth Amendment. *Ramirez*, 560 F.3d at 1023. Moreover, plaintiff's allegation that racial discrimination motivated law enforcement officers' investigation and arrest gives the Court pause before dismissing a Fourth Amendment claim. Crediting a white woman's allegations over a black man's because of the parties' race and gender may predispose law enforcement to find or fabricate evidence of a plaintiff's guilt. Plaintiff's claim rests on more than the "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Defendants' second argument is similarly unpersuasive. Defendants argue that *Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981), *overruled on other grounds by Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008), is a total bar to plaintiff's ability to recover damages for his Fourth Amendment claim.

Defendants misstate the law. In *Smiddy*, the Ninth Circuit created a rebuttable presumption that qualified immunity insulates law enforcement officers from Fourth Amendment violations in certain circumstances. *Id.* at 266. When a prosecutor presses charges, a court will presume probable cause supports plaintiff's arrest because the prosecutor has a professional obligation to use independent judgment to determine whether probable cause supported criminal prosecution. *Id.*; *see also Beck*, 527 F.3d at 863 (explaining *Smiddy's* rebuttable presumption reflects the "longstanding presumption of regularity accorded to prosecutorial decisionmaking" (quotation marks omitted)).

Once a defendant show the presumption applies, a plaintiff may rebut the presumption by showing "the independence of the prosecutor's judgment has been compromised." *Beck*, 527 F.3d at 862. Although the Ninth Circuit has not provided an exhaustive list of ways to rebut the *Smiddy* presumption, a plaintiff may point to evidence that law enforcement officers "pressured" the prosecutor to "act contrary to his independent judgment" or provided the prosecutor with false information. *Smiddy*, 665 F.2d at 266–67. A plaintiff may also rebut the presumption by showing the prosecutor relied "almost entirely" on a deficient police investigation so that it would not be fair to say the prosecutor exercised independent professional judgment. *Harper*, 533 F.3d at 1027 (citing *Smiddy v. Varney*, 803 F.2d 1469, 1472 (9th Cir. 1986), *opinion modified on denial of reh'g*, 811 F.2d 504 (9th Cir. 1987)). And regardless of whether the presumption applies, officers may always be held liable if they acted "maliciously or with reckless disregard for" the plaintiff's rights. *Smiddy*, 665 F.2d at 266–67.

Once "the plaintiff has introduced evidence to rebut the presumption, the burden remains on the defendant to prove that an independent intervening cause cuts off his tort liability." *Smiddy*, 665 F.2d at 267; *Beck*, 527 F.3d at 861–62 (explaining that the rebuttable presumption does not bar liability when the prosecutor's independent decision cannot fairly be described as a "superseding or intervening cause" to a constitutional tort); *Smiddy*, 665 F.2d at 266 (explaining that the presumption bars "damages suffered" after "the filing of the criminal complaint"). Finally, "no presumption arises" if "the relevant evidence" on the prosecutor's use of independent judgment "is not available" because the prosecutor has not submitted proper discovery allowing plaintiff the opportunity to rebut defendants' qualified immunity assertion. *Smiddy*, 665 F.2d at 267–68.

At a minimum, defendants' motion is not timely because *Smiddy's* rebuttable presumption does not apply at the pleadings stage where the prosecutor has not submitted to discovery. The Ninth Circuit has explained that "the presumption of independent prosecutorial judgment in the charging decision is an evidentiary presumption applicable at the summary judgment stage to direct the order of proof; it is not a pleading requirement to be applied to a motion to dismiss, before discovery has taken place[.]" *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002); *see also Smiddy*, 803 F.2d at 1471 (9th Cir. 1986) ("The presumption is a common device to direct the order of proof."). Defendants' motion to dismiss plaintiff's Fourth Amendment claim is denied.

II.    *Fourteenth Amendment*

Defendants move to dismiss plaintiff's claim that law enforcement officers violated plaintiff's right to equal protection under the law. Defendants argue that plaintiff fails to allege facts that give rise to a plausible inference that race-based considerations tainted law enforcement officers' investigation and arrest.

The Equal Protection Clause provides that "[n]o State shall. . . deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, § 1, and prevents "official conduct discriminating on the basis of race," *Washington v. Davis*, 426 U.S. 229, 239 (1976). "[W]henever the government treats any person unequally because of his or her race, that person has suffered an injury that falls squarely within the language and spirit of the Constitution's guarantee of equal protection." *Adarand Constructors v. Pena*, 515 U.S. 200, 229–30 (1995).

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee*, 250 F.3d at

686 (citation and quotation marks omitted). Because plaintiff may ultimately prove discriminatory intent by direct or indirect evidence, "[p]roof of discriminatory motive . . . can in some situations be inferred from the mere fact of differences in treatment." *Sischo-Nownejad v. Merced Cnty. Coll. Dist.*, 934 F.2d 1104, 1112 (9th Cir. 1991), *superseded on other grounds as explained in Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1041 (9th Cir. 2005); *see also id.* at 1113 (explaining that courts looks for evidence of discriminatory intent in § 1983 claims in the same way courts search for discriminatory intent in employment discrimination cases). As such, "in an equal protection claim based on *selective enforcement* of the law, a plaintiff can show that a defendant's alleged rational basis for his acts is a pretext for an impermissible motive." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 591 (9th Cir. 2008) (citation and quotation marks omitted) (emphasis in original); *see also Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000) ("There is a constitutional right, however, to have police services administered in a nondiscriminatory manner–a right that is violated when a state actor denies such protection to disfavored persons.").

Defendants argue the "mere fact that plaintiff is black, standing alone, does not mean that defendants have discriminated on the basis of race." Def.'s Mot. Dismiss 8 (doc. 15). That statement is, of course, true. But plaintiff does not stop at alleging that he is black. Defendants cite *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948 (9th Cir. 2003), *overruled on other grounds by Virginia v. Moore*, 553 U.S. 164, 167 (2008), for the proposition that dismissal is warranted when "the record [is] devoid of any evidence that race motivated" defendant's seizure in violation of the Equal Protection clause. *Bingham* is not illustrative of how the Ninth Circuit approaches motions to dismiss, since it was a decision on a motion for summary judgment after plaintiff had the opportunity to make a record through discovery. *Id.*

Here, the complaint alleges that law enforcement officers treated plaintiff differently than Ms. Castleton solely because she is a white woman and he is a black man. That allegation, combined with plaintiff's assertion that available evidence corroborated his story and not Ms. Castleton, gives rise to a plausible inference that race-based considerations consciously or unconsciously motivated law enforcement officers' conduct. *Cf. Sischo-Nownejad*, 934 F.2d at 1109 (explaining, in the employment law context, that disparate treatment that can give rise to an inference of discrimination may simultaneously be "the product of both legitimate and illegitimate motives"). Moreover, defendants' argument that no discrimination could have motivated law enforcement officers because some are people of color or have family members who are people of color is unavailing. *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 55 (2d Cir. 1998) ("The proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable.").

Defendants also argue that plaintiff's "subjective belief that his arrest was racially. . . motivated is not enough to state a claim." Def.'s Mot. Dismiss 8 (doc. 15). Again, that statement is true, as far as it goes. But here, plaintiff alleges more than a subjective belief of racial bias. Without the support of case law, defendants essentially ask the Court to apply heightened pleading requirements to allegations of discriminatory intent. Because the Ninth Circuit has clearly rejected "proof requirements regarding improper motive in constitutional tort cases brought against individual defendants" at the pleadings stage, the Court rejects defendants' argument and concludes that plaintiff plausibly alleges that defendants violated the Equal Protection Clause. *Galbraith*, 307 F.3d at 1124; *see Twombly*, 550 U.S. at 556 (noting that Rule 8(a)(2) requires only a "short and plain" statement of the claim and explaining that complaints survive 12(b)(6) motions if there are "enough

fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal" conduct).

Therefore, the Court rejects defendants' motion to dismiss plaintiff's Equal Protection claim.

III.    *Qualified Immunity*

Defendants argue qualified immunity bars plaintiff's federal claims against the defendant officers because a "reasonable officer in defendants' position could have believed that the statements by Ms. Castleton and evidence they observed established probable cause." Def.'s Mot. Dismiss 7 (doc. 15).

Qualified immunity protects defendants "from suit" and is not "a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (citation and quotation marks omitted). Defendants can move for qualified immunity at the pleadings stage because "the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery[.]" *Id.* at 231 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987); *cf. Butz v. Economou*, 438 U.S. 478, 506 (1978) (explaining that qualified immunity is vital "to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority").

Qualified immunity protects state actors from liability for violating rights that are not clearly established. *Pearson*, 555 U.S. at 232; *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 792 (9th Cir. 2016) (explaining that the qualified immunity inquiry determines "whether the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful" (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006))). In the two-pronged inquiry, courts must consider whether the facts alleged "make out a violation of a constitutional right" and whether "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555

U.S. at 816 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). To determine whether qualified immunity protects defendants, the "relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 194–95; *see also Anderson*, 483 U.S. at 640 ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). A plaintiff's rights can be clearly established for qualified immunity purposes even without a case on "all fours prohibiting the particular manifestation of unconstitutional conduct at issue." *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004) (citation and quotation marks omitted) (alterations normalized). A court may consider the two prongs of the qualified immunity inquiry in any order it pleases. *Pearson*, 555 U.S. at 234 & 239 (explaining that "a mandatory, two-step rule for resolving all qualified immunity claims should not be retained" because it risks "bad decisionmaking" and stunting the evolution of common law). Further, "under either prong, courts may not resolve genuine disputes of fact." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

Defendants argue that they did not violate plaintiff's constitutional rights and even if they did, qualified immunity still protects officials who "make reasonable but mistaken judgments[.]" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011). Defendants' reliance on a disputed version of events, however, drains the persuasive force out of their argument. In *Tolan*, the Supreme Court cautioned against importing disputed facts in deciding whether to grant government defendants qualified immunity. 134 S. Ct. at 1866; *see also Via v. City of Fairfield*, 833 F. Supp. 2d 1189, 1195 (E.D. Cal. 2011) ("On a motion to dismiss, however, assessing qualified immunity is difficult if an officer's claim to qualified immunity depends on a version of the facts that differs from the allegations in the complaint because the court must take the allegations in the complaint as true.").

PAGE 12 – OPINION AND ORDER

Further, it is unclear how conduct motivated by racial bias could ever amount to reasonable mistake. *See Liberal v. Estrada*, 632 F.3d 1064, 1078 (9th Cir. 2011) ("The qualified immunity standard is not so deferential to officers that it will allow a 'chimera created by [an officer's] imaginings [to] be used against" a plaintiff) (quoting *United States v. Mariscal*, 285 F.3d 1127, 1130 (9th Cir. 2002) (alterations in original)). Therefore, the Court rejects defendants' qualified immunity defense at this time.

IV.    *Monell Liability*

Plaintiff alleges that the City of Eugene failed to adequately hire, train, and supervise law enforcement officers such that the municipality was deliberately indifferent to plaintiff's rights to be free of unconstitutional seizures and discrimination on the basis of race or gender.[1] Defendants move to dismiss the City of Eugene from this case on the basis that plaintiff failed to adequate plead

---

[1] In order to establish *Monell* liability, plaintiff submitted various declarations in support of his opposition brief to defendants' motion to dismiss. The Court will not consider any of plaintiff's declarations at this time. "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee*, 250 F.3d at 688 (citation and quotation marks omitted); *see also* Fed. R. Civ. P. 12(d) (describing the procedures for converting a motion to dismiss into a motion for summary judgment).

While there are two exceptions to the general rule that courts may not entertain extrinsic evidence on a 12(b)(6) motion, *Lee*, 250 F.3d at 688, neither exception applies here. Under the first exception, a court may "consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document.'" *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Here, because the complaint does not reference the declarations, the Court cannot fairly treat the declarations as if they were part of the complaint for pleading purposes. The second exception is inapplicable because, while courts may take judicial notice of some extrinsic evidence under Federal Rule of Evidence 201, this exception is limited to "matters of public record." *Lee*, 250 F.3d at 689. Because the declaration's assertions "could reasonably be disputed," the Court will not take judicial notice of them. *Corinthian Colls.*, 655 F.3d at 999.

how the municipality is liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

In a civil rights action under section 1983, a municipality cannot be held liable on a simple theory of respondeat superior. *Id.* at 692. Instead, the "municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). Because in "virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident," *id.* at 392, the plaintiff has the burden to show that city policy is "the moving force behind the constitutional violation," *id.* at 389. *See also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996) (requiring plaintiffs to prove the unconstitutional municipal policy is the actual and proximate cause of plaintiff's injury).

"[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Although the policy need not be formal or in writing, it must be so permanent and well settled as to constitute a custom or usage with the force of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.").

Whether relying on formal or informal policy, the plaintiff must ultimately show the municipality consciously disregarded the consequences of its action or inaction. *Id.* at 62. Because

courts apply "rigorous standards of culpability and causation," the plaintiff must show that the violation of a constitutional right is the "obvious consequence" of the city's alleged policy, *Bd. of Cnty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 405 (1997), or that the policy presents an "unjustifiably high risk of harm," *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Without any evidence that the municipality would be on constructive notice of the problem prior to the plaintiff's injury, courts must dismiss claims for *Monell* liability.

The Ninth Circuit long held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir.1988) (citation and quotation marks omitted); *Lee*, 250 F.3d at 682–83; *see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 165 (1993) (rejecting the Fifth Circuit's heightened pleading standard in section 1983 municipal liability cases as inconsistent with the notice pleading requirements of Federal Rule of Civil Procedure 8).

Defendants argue that the Supreme Court's new plausibility standard to test the sufficiency of complaints articled in *Twombly* and *Iqbal* implicitly overrules long-standing Ninth Circuit precedent on pleading *Monell* liability. *See Via*, 833 F. Supp. 2d at 1196 (recognizing that even though "discovery may be necessary in many cases to determine whether a plaintiff has a cognizable *Monell* claim . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are signs of a deficient complaint under *Iqbal*) (citation and quotation marks omitted).

Defendants are correct that *Ashcroft* and *Iqbal* changed the pleading standards for *Monell* liability, and that bare allegations that a municipality acted according to official policy no longer suffice. *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). But the complaint here does not stop at such a bare allegation. Instead, the complaint asserts the City has an obligation to train its officers "on how to assess who to arrest in a racially or gender mixed situation." First Am. Compl. ¶ 33. That allegation satisfies *Iqbal* and *Twombly* by putting the City on notice of the type of failure-to-train claim it must defend against.[1]

Defendants also argue that because plaintiff have pointed to no prior violations, plaintiff fail to state a claim of *Monell* liability because the City of Eugene would not have constructive notice that the failure to properly train law enforcement officers presented an unjustifiably high risk of harm or constitutional violations. "[A] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. at 62 (citation and quotation marks omitted). However, "evidence of a pattern of constitutional violations is not always required to succeed on a *Monell* claim" and is unnecessary where violation of a protected right is a "patently obvious" consequence of municipal inaction. *Kirkpatrick*, 843 F.3d at 794.

At this stage, the Court will not hold as a matter of law that the City of Eugene had no constructive notice that institutional racism could taint investigations with bias and lead to

---

[1] The Ninth Circuit's liberal pleading standards reflect an importance difference between *Monell* liability and qualified immunity: "unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983." *Leatherman*, 507 U.S. at 166. Rather, because *Monell* liability only protects municipalities from liability, courts feel no compunction to rush to judgment. *Cf. Pearson*, 555 U.S. at 232 (stressing "the importance of resolving [qualified] immunity questions at the earliest possible stage in litigation").

unconstitutional seizures. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *see also Utah v. Strieff*, 136 S. Ct. 2056, 2069–71 (2016) (Sotomayor, J., dissenting) (explaining even instances of police misconduct which appear "isolated" can be "the product of institutionalized training procedures" and "it is no secret that people of color are disproportionate victims of" unconstitutional seizures, implying that they are not "citizen[s] of a democracy but the subject[s] of a carceral state, just waiting to be cataloged"); Marie Gottschalk, Caught 5 (2015) (providing data showing black men are 6.7 times more likely to be incarcerated than white men in America after adjusting for different population sizes); Michelle Alexander, The New Jim Crow 133–37 & 203 (2012) (discussing studies indicating that law enforcement officers use their discretion to "stop and search" in a "discriminatory matter" and quoting Martin Luther King Jr.'s statement that "[n]othing in all the world is more dangerous than sincere ignorance"). Defendants remain free to move for summary judgment once discovery has revealed whether plaintiff can raise a genuine dispute over whether the City of Eugene had constructive notice of the need for training on this issue.

V.    *Negligence*

Defendants move to dismiss plaintiff's negligence claim for failure to state a claim. In order to make a negligence claim under Oregon law, a plaintiff must plausibly allege

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Son v. Ashland Cmty. Healthcare Servs.*, 244 P.3d 835, 841 (Or. Ct. App. 2010).

Defendants make three arguments in their motion to dismiss plaintiff's negligence claim. None is persuasive.

First, defendants suggest that plaintiff cannot plead inconsistently that law enforcement officers intentionally and negligently caused injury. Defendants invoke *Kasnick v. Cooke*, 842 P.2d 440 (Or. Ct. App. 1992), for the proposition that an allegation of intentional conduct necessarily fails to plausibly plead facts sufficient to support a negligence claim. In *Kasnick*, the Oregon Court of Appeals dismissed plaintiff's negligence claim for injuries he sustained in a "deliberate, combative and reciprocal confrontation" at a sporting event. *Id.* at 441. The Court of Appeals explained there is no such thing as "a negligent fist fight." *Id.* Without any allegation that defendants were similarly belligerent and intentionally violent, the Court finds that *Kasnick* does not control this case. Moreover, the Ninth Circuit has squarely recognized that the same set of underlying facts can support two divergent inferences. *See Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985) ("In light of the liberal pleading policy embodied in Rule 8[(d)(2)], we hold that a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case."); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

Second, defendants argue that plaintiff fails to plausibly allege law enforcement officers acted unreasonably. Under Oregon law, courts do not ordinarily determine whether defendants were negligent as a matter of law. Instead, courts consistently hold that "the reasonableness of defendant's conduct [is an] empirical question[] that generally should be determined by a factfinder[.]" *Pickens v. United States*, 750 F. Supp. 2d 1243, 1252 (D. Or. 2010); *see also Piazza v. Kellim*, 377 P.3d 492, 499 (Or. 2016) (explaining that negligence "embodies a prospective judgment about a course of

events; it therefore ordinarily depends on the facts of a concrete situation and, if disputed, is a jury question" (citation and quotation marks omitted)). Under Oregon law, courts play minimal roles in negligence claims and only exert a gatekeeper function because negligence "ordinarily can be left to the jury, except for conduct at the outer margins" or in "highly unusual circumstances." *Id.* at 513 (citation and quotation marks omitted). As the Oregon Supreme Court recently explained, because negligence "invokes a community's application of its own values, whether a particular outcome of conduct is foreseeable is most appropriately decided by the community's closest proxy in our civil justice system, that is, by a jury." *Id.* Because this is not a "highly unusual" case where no reasonable jury could find defendants acted negligently, the Court cannot interpose itself between plaintiff and the jury.

Similarly, defendants argue plaintiff fails to state a claim against the City of Eugene because he alleges no facts that suggest the municipality knew or should have known it needed better and different training and the municipality's failure was a substantial factor in the negligence. For the reasons cited in the previous paragraph and in the section addressing *Monell* liability, plaintiff's negligence claims survives the motion to dismiss.

VI.    *Intentional Infliction of Emotional Distress*

Defendants move to dismiss plaintiff's intentional infliction emotional distress (IIED) claim. In order to plead a claim of IIED, plaintiff must allege that "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 901 P.2d 841, 849 (Or. 1995) (citation and quotation marks omitted).

PAGE 19 – OPINION AND ORDER

Defendants argue plaintiff fails to state a claim because he fails to plausibly allege an "extraordinary transgression" of socially tolerable conduct. The Court disagrees because even if a jury absolves law enforcements officers of liability for an alleged unconstitutional seizure, "the illegality of conduct is relevant to, but not determinative of, whether the conduct is sufficiently outrageous to support an IIED claim." *House v. Hicks*, 179 P.3d 730, 737 (Or. Ct. App. 2008). The crux of the issue is whether defendants' conduct is more fairly described as "commonplace friction and rudeness among people in day-to-day life" or extraordinarily offensive, because IIED does not extend liability to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Williams v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 958 P.2d 202, 204 (Or. Ct. App. 1998) (citations and quotation marks omitted).

Oregon case law shows that plaintiff's allegations are plausibly suggestive that he is entitled to relief. First, plaintiff and defendants, as citizen and police officers, were in a "special relationship" — an "important factor" in determining whether the officers' conduct is extraordinarily transgressive. *McGanty*, 901 P.2d at 849; *see also House*, 179 P.3d at 737 (explaining that the officer-citizen relationship is special because an officer has a greater obligation "to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm's-length encounters among strangers"). Another factor weighing in plaintiff's favor is that "harassment directed to individuals on the basis of historically disfavored personal characteristics more readily transgress[es] contemporary social bounds than do other forms of antagonistic behavior." *Williams*, 958 P.2d at 204–05. Moreover, "unwanted physical contact . . . of a . . . violent nature" that occurs during arrests can be an "aggravating factor" that tends to show "extraordinarily outrageous" behavior. *Clemente v. State*, 206 P.3d 249, 255 (Or. Ct. App. 2009). Finally, Oregon law recognizes that when

PAGE 20 – OPINION AND ORDER

defendants make "false, unfounded, or unsubstantiated" statements, courts and juries more readily find an "extraordinary transgression" of socially tolerable conduct regardless of defendants' motives. *House*, 179 P.3d at 739. Therefore, the Court denies defendants' motion to dismiss plaintiff's IIED claim.

VII.    *Integral Participation*

Defendants move to dismiss plaintiff's claims against law enforcement officers because they argue plaintiff failed to allege sufficient details of how each officer individually contributed to and is therefore liable for plaintiff's alleged injuries. Without these allegations, defendants argue, the Court is unable to impose joint liability on "mere bystanders." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011). The Court disagrees and finds plaintiff plausibly alleges that each officer was an "integral participant." *Id.*

"Section 1983 liability extends to those who perform functions integral to an unlawful search, even if their individual actions do not themselves rise to the level of a constitutional violation." *Id.* at 1089–90 (citation and quotation marks omitted). The Ninth Circuit has recognized that a police officer need not personally arrest an alleged offender in order to be liable. *See Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996) (citing with approval *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989), in which the court recognized that an officer who merely served as backup and remained armed during a search could be an integral participant). Even silently approving of an unconstitutional arrest can give rise to integral participant liability because all plaintiff must show is that officers "participated in some meaningful way" in the coordinated effort to unconstitutionally arrest plaintiff. *Boyd*, 374 F.3d at 780; *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (explaining a plaintiff need only show "some fundamental involvement in the conduct

PAGE 21 – OPINION AND ORDER

that allegedly caused the violation"); *Hopkins v. Bonvicino,* 573 F.3d 752, 770 (9th Cir. 2009) (holding that officers are not integral participants when they do "not participate in the unconstitutional search in any fashion"); *Chuman,* 76 F.3d at 295 (stating that the integral participant rule only absolves teammates of liability where they "had no role in the unlawful conduct"). After all, the Ninth Circuit applies "traditional tort law principles to determine the extent" of each officer's liability on a Section 1983 claim. *Bravo,* 665 F.3d at 1089; *see also* Restatement (Second) of Torts § 8A cmt. b (1965) ("If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result."); *Monteilh v. Cnty. of Los Angeles*, 820 F. Supp. 2d 1081, 1089 n.10 (C.D. Cal. 2011) ("[O]fficers may be integral participants even if they have no knowledge of a plan to commit the alleged violation if their physical participation in the alleged violation was part of a closely related series of physical acts leading to the violation.").

Plaintiff plausibly pleads that Officers Inman and Connor were integral participants. Plaintiff does not merely plead in some conclusory way that they were just teammates of the alleged tortfeasor and took no part in the investigation and arrest. *Chuman,* 76 F.3d at 295 ("The underlying problem with a 'team effort' theory is that it is an improper alternative grounds for liability. . . even if the defendant had no role in the unlawful conduct[.]"). Officer Conner made the decision to arrest plaintiff and plaintiff alleges that Officer Inman interviewed him with Officer Connor, falsely accused plaintiff of criminal activity, falsely attributed statements to plaintiff, and transported plaintiff to jail. First Am. Compl. ¶¶ 6 & 7.

The closer question is whether Officers Rosales and Evans are integral participants or mere bystanders. Here, plaintiff alleges only that Officers Rosales and Evans "assisted officers Connor and

PAGE 22 -- OPINION AND ORDER

Inman in the arrest of plaintiff[] and the collection of evidence." *Id.* ¶¶ 7 & 8. Some case law suggests that merely collecting evidence is insufficient to hold teammates liable. For example, the Ninth Circuit rejected the argument that merely participating in an investigation leading up to an arrest is sufficient to establish integral participant liability. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008); *Bravo*, 665 F.3d at 1090. However, in those cases, the officers were not at the scene of the arrest. This is not a case in which Officers Rosales and Evans were merely "wait[ing] in the front yard" and did not participate in the allegedly racially discriminatory investigation and unconstitutional arrest "in any fashion[.]" *Hopkins*, 573 F.3d at 770. Therefore, plaintiff pleads enough "factual content" to survive a 12(b)(6) motion because these allegations nudge plaintiff's allegations of joint liability across the threshold from conceivable to plausible participation. *Iqbal*, 556 U.S. at 678 & 680.

## CONCLUSION

Defendants' motion to dismiss (doc. 15) plaintiff's claims is DENIED. Defendants' motion for judicial notice (doc. 16) is GRANTED. Plaintiff's request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this 15th day of February 2017.

Ann Aiken
United States District Judge